UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | DOCKET NO. 2:22-cr-146-NT |
| ) | |
| JOSEPH ZOLL ) | |

**DEFENSE SENTENCING MEMORANDUM**

Joseph Zoll is about to turn age 64. He has admitted to his conduct and seeks help with his a problem. The statute requires a fifteen year minimum mandatory period of incarceration. The advisory guideline range is measurably longer. We suggest a sentence of twenty years is sufficient incarceration based on the facts and circumstances of this case, the statutory sentencing factors, similar cases in the District and Joseph's age and declining health. Any period of incarceration will be followed by a lengthy period of supervision. We suggest ten years.

**Joseph Zoll**

Joseph faces the balance of his life in federal prison. He accepts the wrongfulness of his conduct and to the harm he caused. His remorse is deep and genuine. Looking at how he arrived at this a this point two events in his history seemed to have played a role.

Joseph was sexually abused by a babysitter at age five. PSR ¶ 76. Not once or twice but "about 40 times." Id. She had "him perform "things of sexual nature" for her and about five other female friends" she invited to join her. Id. Around this time Joseph "suffered with chronic enuresis (bed wetting). Id His father was angered by the bed wetting and yelled at Joseph, berated him and hit him with a belt. Id.

One of the most common regression symptoms of children that have been

1

sexually abused is diurnal and nocturnal enuresis (mainly nocturnal). Such children have difficulty sleeping and experience nightmares, anxiety, guilt, and shame. These cause him to use defensive mechanisms, one of which is regression to an early development stage (bedwetting).[1]

His older sister writes:
> In 1965, when Dan was five years old, he started wetting the bed. My father had a difficult time dealing with the anuresis and punished Dan daily for it. I remember he tried to correct his bedwetting through humiliation once, by hanging the wet sheets from my brother's 2nd floor bedroom window. My sister and I feared for Dan when we woke up in the morning. We hated hearing our father's bellows and Dan's sobs after his bed inspection. When Dan was eleven, our father brought him to see doctors who tried to fix him, but nothing worked. Eventually, when Dan reached the age of fourteen, the bedwetting miraculously stopped.

Letter of Rachel Zoll Schumacher, Exhibit 1, p. 2 ("Rachel Letter").

Some combination of being abused sexually and physically frequently appears in the history of those the court sees in cases of this type. The related bed wetting helps to documents the significance of the trauma Joseph endured as a child.

Joseph graduated high school in 1978, took a variety of community college course and went to culinary school. PSR ¶ 85. He served in the Marines from 1980 through 1984. PSR ¶ 78. He was arrested for a drug charge in 1986 and served about three successfully completing parole. PSR ¶ 58. He worked at TGI Friday's Restaurant and served in the

---

[1] https://www.bedwettingtherapy.com/blog/regression-to-bedwetting-as-a-result-of-sexual-abuse/

Marine reserves until he completed his parole. Ex. 1, Rachael Letter. He moved to Florida in 1995 to attend motorcycle mechanic school. PSR ¶ 85. The first record of any sexual impropriety are two misdemeanor exposure cases in 1996 in Florida. PSR ¶¶ 59, 61. There is no record of him having been referred to or having received and counseling or treatment. Joseph told probation in this case, "he should have asked for help and that being labeled a "pedophile" is not something one looks for in life." PSR ¶ 24.

Joseph lived and worked in Florida for almost twenty years. In addition to working as a mechanic, in restaurants, and for Dish Network he also ran a produce stand. PSR ¶ 86. There is no further record of sexual misconduct while in Florida.

The second "event" that appears to play a major contributing role to the current offense is Joseph's isolation. In 2013, Joseph moved to Maine after his father suffered "a massive stroke." Ex. 1, Rachael Letter; PSR ¶ 78. "He was with our father daily - in the hospital and in rehab. Dan advocated for our father and researched evolving therapies for stroke victims." Id. His father died in August, 2013. Joseph returned to Florida for a few months, then came back to Maine permanently in 2014 to care for his mother. Ex. 1, PSR ¶ 78. His mother was legally blind and developing dementia. Ex. 1. While his sister Rachael served as Power of Attorney and took care of the finances, Joseph lived with and was his mother's caretaker until her death at age 97 in late 2020. Id.

Spending six years caring for his mother in Maine was an isolating experience for Joseph. This included the COVID pandemic which continued following her death. His sister describes this as they "lived a very isolated and sheltered life during the pandemic." Ex.1. Those who know Joseph, his sister and brothers in law, all say he has a good heart, he helps others and the sexual victimization is aberrant from someone who is otherwise non-violent and kind to others.

His sister notes that Joseph shared with her his remorse for not having gotten treatment. He "confided to a mental health professional that he thought he might be a pedophile - but that he had never touched or assaulted anyone. He asked where he could get help, but he was advised not to speak of it otherwise the therapist was obligated to report him to the authorities. A few years later Dan voiced his concerns to an attorney. He was given the same answer and was advised not to talk about it." Ex. 1, Rachael letter, p. 5.

Living in the isolation of caring for his mother, Joseph lost most in person social contact. With the Pandemic he lost all social contact. Increasingly isolated the on-line world became his social network. Joseph did not turn to the internet only for sex. He was on the computer for ever longer periods of time reading, game playing, and interacting with others in non-sexual ways. While living in Florida he had girlfriends, social friends and went on dates. He lost all of that in Maine. In hindsight Joseph sees that he self isolated. He could and should have created a social network beyond being on-line.

**Failing Health**

Joseph has multiple medical difficulties. His major concern is going blind. He has uveitis, an inflamation of the middle layer of his eyes. PSR ¶ 81. This has been an ongoing process. While is "waxes and wanes" when his eyes are more inflamed they bulge and he has a "floater" within his eye that blocks a part of his vision. He has torn retinas in both eyes. Joseph has high blood pressure, asthma and arthritis throughout his joints. The arthritis is treated with 800 mg ibuprofen in the morning and night. His is also concerned about potential colon cancer which runs in his family. His sister notes he was at one time diagnosed as bi-polar and potentially ADHD. PSR ¶ 83; Ex. 1, p. 3. Joseph asks for a recommendation to FMC Devens to address both his health needs and the sex offender treatment program available there. PSR ¶ 81.

**Comparison with Other Cases and Disparity**

The First Circuit reiterates, "[t]here is no single reasonable sentence in any particular case but, rather, a universe of reasonable outcomes," *United States v. Walker*, 665 F.3d 212, 234 (1st Cir.2011), and "[w]e generally respect the district court's sentence as long as the court has provided a plausible explanation, and the overall result is defensible," *United States v. Innarelli*, 524 F.3d 286, 292 (1st Cir.2008); *U.S. v. Prosperi*, 686 F.3d 32, 43 (1st Cir. 2012)(J. Lopez). An appropriate sentence may be lengthy, yet still below the advisory range. This is such a case. Congress provides a sentencing baseline by requiring a 15-year minimum mandatory sentence. Joseph accepts that the conduct in this case likely calls for a sentence above the minimum. A summary of cases in the District demonstrates a range of sentences in exploitation cases, almost all of which also included child pornography counts.

**Sentences of 20 Years or Less**

**Wayne Nikki**, 2:15-cr-115-JDL. Niski was charged with exploitation and three counts related to Child Pornography including transportation. He pled to exploitation and was sentenced to **198 months (16.5 years) and 10 years of supervised release**. The offense conduct included him taking photographs of the young victim showing sexual conduct. The photographs were taken when she was visiting - primary custody was a different adult. He was already a felon and a criminal history V.  He had well over 700 child pornography images and videos and was engaged in on-line trading images with others.

**U.S. v. Cheese**, 13-cr-155-JAW. The defendant established an on-line relationship with the victim.  He traveled from England to Bangor, Maine and met the 13 year old victim at least three times in hotel rooms.  On each occasion he had her engage in sex acts and recorded the conduct. Prosecution version ECF#16. While the victim was 13, the conduct was actual sex and photographed. Judge Woodcock imposed a sentence of **204 months**.

**Frederick Butler,** 13-cr-187-NT was convicted of two counts of gross sexual assault on minors in 1995. In 2001, he was convicted in Maine Federal Court of receiving child pornography. Two months after completing supervised release he *again* engaged in possessing and distributing child pornography. The government sought a sentence of 300 months. ECF #41, p. 1. The content of the e-mails sent by Mr. Butler demonstrated predatory intentions and a continuing desire to engage in sex with young boys. Id., pp. 4-6. Butler faced a minimum mandatory of 15 years and maximum of 40 years. Id. 7. Judge Torresen entered a sentence of **20 years** (240 months).

**Sentences of 300 months (25 years)**

**U.S. v. David Muise,** 13-cr-12-NT. Mr. Muse engaged in sexual abuse of the young victim in front of a web camera via Skype. Others were watching and recording the abuse in a live broadcast. Recovered images showed him vaginally penetrating the child as well as having the child engage in oral sex with him. He had hundreds of additional child pornography images. The PSR established an advisory range of life with a 30 year statutory maximum which the government sought. Musie was a military veteran suffering from PTSD. Judge Torresen imposed a sentence of 25 years followed by 20 years of supervised release.

**Christopher Veazie**, 2:11-cr-202-GZS. Mr. Veazie possessed over 2000 images and 400 videos of child pornography. He had photos of him sexually abusing a young boy including his penis in the boys mouth and sodomizing the boy. Judge Single sentenced him to **300 months**.

**David Donahue**, 2:19-cr-24-JDL, had intercourse and oral sex with a 6 year old victim, and made photographs of his naked victim's genitals and of him sexually abusing her. He had a Dropbox account with over 1,000 other child pornography images. He had a prior state sexual abuse conviction. He was sentenced to **300 months**.

**Denver Carolissen,** 2:14-cr-127-NT, engaged in sexual conduct with a minor victim from age 8 to 12 years old while filming and sharing the images over the internet. He created and shared many videos including images of him engaged in penetration of the child victim with both his penis and his fingers. He had additional vaginal and anal sex with minors. This all occurred after he had served a prison sentence for possession of child pornography. Judge Torresen sentenced him to 240 months on the Exploitation and 60 months on Transportation of child pornography for a total sentence of **300 months** (25 years).

**Benjamin Conroy,** 2:21-cr-189-NT, was recently sentenced by this court to 264 months (22 years). The facts are well known to the court. Briefly, Conroy filmed video of himself with a special needs student in a classroom and shared the image over social media.

**Seriousness of the Offense**

The offense is serious. It occurred over a period of time. It victimized children. It is neither the "least harmful" way of violating the statute nor the most serious. Unlike Muise, Donahue, and Carolissen, Zoll did not personally touch a child. He directed others to do so over video. That is a distinction. He did not rape a child. Nor did the women being directed on video. While the detachment of video does not mitigate the conduct, it also is different from personal perpetrator "skin to skin" conduct.

The is no evidence or suggestion that Zoll ever personally touched a child. While the children in the videos were abused and abused at Zoll's direction, they were not raped in the way the victims were in the 30 year cases. While Zoll is fully responsible for his conduct, he was but one of many the abuse ring in the Phillippines were catering to. Zoll's victims were being victimized as a business by the Philippine group. The children were victimized for and by others. In Muise, Donahue, Carolissen and Conroy, the victims were only abused by the defendants. Those victims would never have been abused, but for the conduct of the

defendants. Zoll's conduct is less personal and not as direct. It remains very serious, but is not the same as the rapes in Muise, Donahue and Carolissen. A sentence less than in those cases is proportionally appropriate.

Zoll is almost age 64. A sentence beyond 20 years is likely a life sentence. In comparison, Muise was age 26. Carolissen age 42. Donahue age 48. Conroy age 33. Zoll is far older than past defendants who received 20 years or greater.

**Remaining PSR Objections Are Withdrawn**

- Objection 1 is resolved and withdrawn.
- Objection 2 involves aspects of the applicable guideline and may remain part of the court's consideration in a final sentence but requires no ruling and to that extent is offered as an aspect of a below range sentence and requires no ruling.
- Objection 3 regarding a single history point related to a marijuana conviction seem irrelevant in the scope of this sentencing and is withdrawn.
- Objection 4 as to proposed Special Conditions 6 and 9 are withdrawn as the conditions of supervision twenty years from now will certainly be different and there is no reason to focus on those now.

**Financial and Restitution Issues**

Joseph is indigent and has no funds to pay a fine or other increased assessments beyond the mandatory $100 per count assessment. PSR ¶¶ 87, 98, 99. We are informed there are three victims who seek restitution and Joseph agrees to restitution of $3,000 for each of these victims for a total restitution amount of $9,000. We ask that interest be waived as he is incarcerated and the payments toward the total will be modest but also a serious and additional punitive hardship on Joseph while in prison.

**Conclusion**

Joseph Zoll comes before the court having admitted to his misconduct. He has pled guilty and accepts responsibility for what he has done. He has asked for counseling and help to address his problem. He knows he is going to federal prison for potentially the balance of his life. His health is failing. He has vison problems and is rapidly aging. His is at physical risk in prison, due to the nature of his offense, his age and diminishing sight and physical ability to defend himself. Recent high profile cases remind us of the violence in federal prisons.[2]

A sentence of twenty years is a very long sentence. It may be a life sentence for Joseph. It is above the minimum mandatory. It sufficiently punishes him for the crime, it deters, it "sends a message" and it protects society. It is consistent with sentences in other cases. All of the §3553(a) factors are met by a 20 year sentence. The $9,000 restitution order will make the time in prison that much harder as Joseph will have to pay a significant portion of whatever meager prison earning he has to the victim. Should Joseph complete the period of imprisonment, he will be on supervised release with the conditions recommended in the PSR for at least ten additional years. He will have to register as a sex offender. We ask the court to recommend he be housed at the FMC Devens to address his medical needs and to provide needed sex offender treatment.

DATE: December 7, 2023                    /s/ *David Beneman*
                                          David Beneman
                                          Attorney for Joseph Zoll

David Beneman
Federal Defender

---

[2] Lawrence Nassar, age 59, the former doctor for the women's gymnastic team was stabbed multiple times at FCC Coleman this July. Derek Chauvin, a former police officer convicted in the Rodney King murder was stabbed multiple times at a federal prison in AZ a few weeks ago.

P.O. Box 595
Portland, Me 04112-0595
207-553-7070 ext. 6921
David_Beneman@fd.org

**CERTIFICATE OF SERVICE**

I, **David Beneman**, attorney for **Joseph Zoll**, hereby certify that I have served, electronically, a copy of the **within "DEFENSE SENTENCING MEMORANDUM"** upon **Craig Wolff**, Assistant United States Attorney, United States Attorney's Office, Portland, ME and all counsel of record via the ECF system.

/s/ *David Beneman*
David Beneman

DATE: December 7, 2023